No. 19-1601

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

―――――――

HAROLD STONE, et al.,

*Plaintiffs-Appellees,*

v.

SIGNODE INDUSTRIAL GROUP LLC, et al.,

*Defendants-Appellants.*

―――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:17-cv-5360
The Honorable Thomas M. Durkin, United States District Judge, Presiding

―――――――

## DEFENDANTS' MOTION TO STAY THE DISTRICT
## COURT'S ORDER AND INJUNCTION PENDING APPEAL

―――――――

JOSEPH J. TORRES
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
jtorres@jenner.com

*Counsel for Defendants-Appellants
Signode Industrial Group LLC and
Illinois Tool Works, Inc.*

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), Signode Industrial Group LLC ("Signode") and Illinois Tool Works, Inc. (collectively, "Defendants") respectfully request that this Court stay the district court's order and permanent injunction pending disposition of this appeal.

## BACKGROUND

### I.     Facts Giving Rise to this Dispute

This case involves Plaintiffs' claim to alleged vested retiree medical benefits. The parties agree this dispute turns on the meaning of two provisions in a 2002 contract (the "2002 Agreement") originally between Acme Packaging Corporation ("Acme") and one of the Plaintiffs, the Steelworkers Union (the "Steelworkers"), that covered certain retirees from Acme's now-closed Riverdale, Illinois plant.

The 2002 Agreement's terms are included in three documents: a 1994 Pensioners' and Surviving Spouses' Health Insurance Agreement, an incorporated 1994 Program of Insurance Benefits (collectively, the "1994 Agreement), and a 2002 settlement between Acme and the Steelworkers that detailed certain changes to the Agreement and Program. Ex. A (Dkt. 36-2); Ex. B (Dkt. 36-3); Ex. C (Dkt. 36-4).[1]

The 2002 Agreement addresses a single topic—retiree medical benefits. *Id*. Section 6 provides:

> Any Pensioner or individual receiving a Surviving Spouse's benefit who shall have become covered by the Program established by this Agreement shall not have such coverage terminated or reduced (except as provided in this Program of Insurance Benefits) so long as the individual remains retired from the Company or receives a Surviving Spouse's benefit, notwithstanding the expiration of this Agreement, except as the Company and the Union may agree otherwise.

---

[1]     Citations will be to the Exhibits to this motion "Ex. ___" and to the filings before the lower court: "Dkt. ___, at PageID #:___."

Ex. A (Dkt. 36-2 at PageID #:605).

Section 7 of the 2002 Agreement provides such an exception, stating it:

> [S]hall remain in effect until February 29, 2004, thereafter subject to the right of either party on one hundred and twenty (120) days written notice served on or after November 1, 2003 to terminate the "Pensioners' and Surviving Spouses' Health Insurance Agreement."

Ex. A (Dkt. 36-2 at PageID #:606), as amended by Ex. C (Doc. 36-4 at Page ID #:684).

The 2002 Agreement's obligations were assumed in 2003 by Defendant Illinois Tool Works, who subsequently assigned those obligations in 2014 to Defendant Signode. Dkt. 1, ¶ 38 (PageID #:7); Dkt. 19, ¶ 38 (Page ID #:263-64); Dkt. 19, ¶ 52 (Page ID #:268); Dkt. 1, ¶¶ 53-54 (Page ID #:8); Dkt. 19, ¶¶ 53-54 (Page ID #:268-69). In 2015, Signode exercised its rights under Section 7 and terminated the 2002 Agreement. Dkt. 36-11. Two years later, Plaintiffs filed this lawsuit, claiming that Section 6 promised vested retiree medical benefits that survived the termination of the 2002 Agreement. Dkt. 1.

## II.  The District Court Grants Plaintiffs' Motion for Summary Judgment and Enters a Permanent Injunction

In March 2019, the district court entered Orders granting the Plaintiffs' motion for summary judgment, Ex. D (Dkt. 55) (the "Order"), and entering a permanent injunction in their favor. Ex. E (Dkt. 64). The district court found that Section 6 promised vested retiree medical benefits that survived the termination of the 2002 Agreement. Ex. D at 7 (Dkt. 55 at PageID #:969).

The district court acknowledged that Section 7 gave Defendants the right to unilaterally terminate the 2002 Agreement. *Id*. at 5 (Dkt. 55 at PageID #:967). However, the district court rejected Defendants' argument that Section 7 permitted termination of Plaintiffs' retiree medical benefits, because "section 7 does not mention termination of benefits, only termination of the

agreement." *Id*. Defendants timely appealed the district court's order and filed their opening brief on June 3, 2019.

### III. The District Court Denies Defendants' Motion to Stay the Permanent Injunction

Pursuant to Federal Rule of Civil Procedure 62(d), Defendants moved to stay the district court's injunction pending the disposition of this appeal. Dkts. 71, 73. Defendants argued that the district court's Order failed to adhere to contract interpretation principles regarding the application of "general" durational clauses recently reiterated by the Supreme Court in *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), and *CNH Industrial N.V. v. Reese*, 138 S. Ct. 761 (2018). Dkt. 73 at PageID #:1084-86. Defendants further argued the district court failed to apply this Court's recognition that "benefits described as 'lifetime' are not really vested when the same contract also reserves the right to revoke them, because the only proper construction of the two seemingly conflicting provisions is that the 'lifetime' benefits are 'good for life unless revoked or modified.'" *Barnett v. Ameren Corp.*, 436 F.3d 830, 833 (7th Cir. 2006) (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 644-45 (7th Cir. 2004), and *UAW v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003)). *Id*. at PageID #:1086-89.

Defendants further explained that they would suffer irreparable harm by having to reinstate the 2002 Agreement, at an estimated annual cost of $1.3 million-$1.6 million, while this appeal was pending because they would be unable to recoup the reinstatement costs from the Plaintiffs. *Id*. at PageID #:1089-90. Defendants supported their argument regarding this financial impact with evidence explaining the costs they would bear. *Id*.; Dkt. 73-1 (declaration of Patricia Chidiac). Defendants further pointed out that should Plaintiffs eventually prevail, they could be compensated for any costs they had to bear. Dkt. 73 at PageID #:1090-91.

3

In response to this latter point, Plaintiffs did not challenge the accuracy of Defendants' showing that it would have to annually expend approximately $1.5 million to reinstate coverage. Dkt. 79 at PageID #:1152. Instead, Plaintiffs asked the district court to presume that Plaintiffs would be irreparably harmed by citing to various other unrelated decisions where such harm was found. *Id.* at PageID #:1151-52.

On May 29, 2019, the district court entered a brief, three-page order that provided several justifications for refusing to stay the injunction. *See* Ex. F (Dkt. 83) (the "Stay Order"). *See also* Fed. R. App. P. 8(a)(2)(A)(ii). Regarding Defendants' likelihood of success on their appeal, the Stay Order concluded—without expanding on the district court's prior analysis—that Defendants had little likelihood of success on appeal because their arguments were premised on a flawed reading of the 2002 Agreement. *See* Ex. F at 2 (Dkt. 83 at PageID #:1197 ("The Court explained in its [Order] why this is not the correct reading of the contract. In that decision, the Court already addressed the cases Defendants cite in support of their motion for a stay.").

Regarding irreparable harm, the district court concluded that even if there were some merit to Defendants' arguments, a stay was not warranted because Plaintiffs were likely to suffer harm if the district court's injunction was not immediately implemented. *Id.* at 3 (Dkt. 83 at PageID #:1198). The district court found it "undeniable" that Defendants would be unable to recover the $1.3 million-$1.6 million Signode would have to expend on an annual basis to reinstate coverage while this appeal was pending. *Id.* Nonetheless, the district court concluded that this harm would not materially affect Defendants' businesses. *Id.* The district court further found that because the benefits at issue were terminated three years ago, Plaintiffs' harm would far outweigh any harm to Defendants. *Id.* However, the district court cited no evidence in support of this conclusion regarding Plaintiffs. *Id.*

## **ARGUMENT**

**I.     Applicable Legal Standards**

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), this Court may stay or suspend an injunction entered by a district court pending the disposition of an appeal. In considering such a request, this Court considers four factors: (1) whether the movant has made a showing of likelihood of success on appeal; (2) whether the movant has demonstrated a likelihood of irreparable injury absent a stay; (3) whether the stay would substantially harm other parties to the litigation; and (4) where the public interest lies. *See, e.g.*, *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985); *see also Deutsche Bank Nat'l Trust Co. v. Cornish*, 759 F. App'x 503, 506 (7th Cir. 2019).

A "sliding scale" approach applies, where a moving party's showing that it is very likely to prevail on appeal reduces its burden to show that the balance of the harms weighs in its favor. *See, e.g.*, *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546–47 (7th Cir. 2007).

Each of these factors supports stay of the district court's permanent injunction. First, Defendants have a strong probability of prevailing on appeal because the district court's Order was premised on a misreading of the 2002 Agreement that cannot be squared with Supreme Court and Seventh Circuit precedent.

Second, Defendants will be irreparably harmed if the stay remains in place because they will be forced to pay substantial sums in order to reinstate medical coverage, but are unlikely to recover those costs in the event that this Court reverses the district court's Order. Third, Plaintiffs will suffer no substantial injury if the injunction is stayed because any harm they may have incurred while this matter has been pending can be remedied through monetary relief.

Finally, the injunction should be stayed because the public interest favors the enforcement of valid contracts according to their terms.

## II.  Defendants Are Likely to Succeed on the Merits of their Appeal

The "likelihood of success" standard requires showing something less than a 50% chance of success. *See Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 846, 849 (N.D. Ill. 2007). To meet this standard, it is "enough that the [moving party] have a *substantial case* on the merits." *Thomas v. City of Evanston*, 636 F. Supp. 587, 590 (N.D. Ill. 1986) (emphasis added). Defendants here easily satisfy this standard, particularly given the de novo standard of review on appeal, *see ABS Global, Inc. v. Inguran, LLC*, 914 F.3d 1054, 1076 (7th Cir 2019) (citations omitted), and the district court's clear legal errors. That is true for five principal reasons.

***First***, the central premise of the district court's Order—that Section 7 of the 2002 Agreement did not control termination of Plaintiffs' alleged vested benefits because it "does not mention termination of benefits, only termination of the agreement," Ex. D at 5 (Dkt. 55 at PageID #:967)—is mistaken. The sole subject of the 2002 Agreement is the retiree medical benefits Plaintiffs seek. There is simply nothing else in the 2002 Agreement that could have been terminated.

Thus, there is no difference here between: (a) a provision that expressly gives Defendants the right to terminate benefits; and (b) a provision that expressly gives Defendants the right to terminate the agreement that provides those benefits. The district court's conclusion that Section 7 gave Defendants the "unilateral" right to terminate the 2002 Agreement, *id.*, therefore should have been the end of this case. As this Court has held, "when 'lifetime' benefits are granted by the same contract that reserves the right to change or terminate benefits, the 'lifetime' benefits are

6

not vested." *Vallone v. CNA Fin. Corp.*, 375 F.3d at 634-35 (citing *Rockford Powertrain*, 350 F.3d at 704).

***Second***, the district court's conclusion that Defendants could not terminate entitlements under the 2002 Agreement because Section 7 did not specifically reference "benefits" is at odds with generally-accepted principles of contract interpretation and recent Supreme Court case law instructing that whether benefits are vested is to be determined according to "ordinary principles of contract law." *Tackett*, 135 S. Ct. at 933; *Reese*, 138 S. Ct. at 763.

In *Tackett*, the Supreme Court rejected a series of inferences that the Sixth Circuit had used to address vested benefit claims. 135 S. Ct. at 935–37. Among the errors the Supreme Court identified in the Sixth Circuit's approach was its "refus[al] to apply general durational clauses to provisions governing retiree benefits." *Id*. at 936. In that regard, the Supreme Court further noted that the Sixth Circuit's erroneous reasoning "went even further, [by] requiring a contract to include a specific durational clause for retiree health benefits to prevent vesting." *Id*. The Supreme Court expressly rejected this approach, finding that it "distort[ed] the text of the agreement and conflict[ed] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." *Id*. (citations omitted).

And in *Reese*, the Supreme Court reaffirmed *Tackett* and again reversed a Sixth Circuit decision that had failed to apply a general durational clause. *See* 138 S. Ct. at 766 (noting that the Sixth Circuit in the decision on review had erroneously "refused to apply general durational clauses to provisions governing retiree benefits,'" which in turn "distort[ed] the text of the agreement" and conflicted with basic principles of contract law (internal quotation marks omitted)).

7

*Tackett* and *Reese* make clear that federal courts must give meaning to durational clauses, even those that might be considered "general." *Tackett* and *Reese* also flatly rejected the notion that a termination provision must specifically refer to retiree medical benefits in order to defeat a vesting claim.

In this case, the district court failed to apply Section 7's termination clause because that clause did not expressly reference "benefits." *See* Ex. D (Dkt. 55 at PageID #:967). But under the district court reasoning, even if the 2002 Agreement covered multiple subjects, a general termination clause would have to expressly reference each subject of the contract in order for it to be subject to termination. Such an approach plainly conflicts with generally-accepted contract interpretation principles, as emphasized by *Tackett* and *Reese*, and is therefore likely to be reversed by this Court on de novo review. *See Gallo v. Moen Inc.*, 813 F.3d 265, 269 (6th Cir. 2016) (applying *Tackett*, the court notes that "the general durational clause supplies a final phrase to every term in the [contract]: 'until this agreement ends.'") (citations omitted).

***Third***, the district court's reasoning is likely to be reversed by this Court because it contravenes the rule against superfluities in contract interpretation. Section 6 of the contract states that retirees "shall not have such coverage terminated or reduced (***except as provided in this Program [*of Insurance Benefits*])***" and "***except as the Company and the Union may agree otherwise.***" Ex. A (Dkt. 36-2 at PageID #:605) (emphasis added). Section 7 in turn provides Defendants with the right to terminate the 2002 Agreement on 120 days' notice. Ex. A (Dkt. 36-2 at PageID #:606), as amended by Ex. C (Doc. 36-4 at Page ID #:684). The exceptions in Section 6 clearly contemplate that there is some mechanism within the four corners of the 2002 Agreement that permits "coverage [to be] terminated or reduced."

The district court nonetheless concluded that Section 6 provided vested benefits that could not be terminated. That reading cannot be squared with this Court's repeated instruction that contracts should not be read in a manner that renders language superfluous. *See, e.g.*, *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 746 (7th Cir. 1996) (noting that "fundamental principles of contract law caution" against any reading of a contract that "would render [contractual language] superfluous"); *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 (7th Cir. 1990); *Restatement (Second) of Contracts* § 203(b) (1981).

If Section 6 truly created a vested interest there would have been no need for the contract drafters to include the exclusions in Section 6 discussed above. Thus, by finding that Section 7 did not include the unilateral right to terminate the only thing provided for in the 2002 Agreement—retiree medical benefits—the district court rendered Section 7 meaningless. This holding fails to adhere to the above precedent, as well as this Court's instruction that a contract "should be read as a whole so that all its parts will be given effect," and "related documents must be read together." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995).

***Fourth***, the district court ignored this Court's holding that "when 'lifetime' benefits are granted by the same contract that reserves the right to change or terminate the benefits, the 'lifetime' benefits are not vested." *Vallone*, 375 F.3d at 634–35 (citation omitted). This is because "benefits described as 'lifetime' are not really vested when the same contract also reserves the right to revoke them, because the only proper construction of the two seemingly conflicting provisions is that the 'lifetime' benefits are 'good for life unless revoked or modified.'" *Barnett*, 436 F.3d at 833 (7th Cir. 2006); *see also Bland v. Fiatallis N.A. Inc.*, 401 F.3d 779, 786 (7th Cir. 2005) (finding interpretation of "lifetime" language as "good for life unless revoked or modified" was "most plausible" because "the presence of a reservation of rights clause fundamentally alters

9

the interpretation of 'lifetime' language; both the clause and the 'lifetime' language must be read together, creating a tension that is best relieved by finding that retirees are entitled to benefits for life, but that this entitlement is subject to change at the employer's will." (citations omitted)).

Under this precedent, this Court has consistently concluded that a termination clause defeats a vesting claim. In *Murphy*, the plaintiff claimed lifetime benefits by citing "coverage language" that provided benefits to retirees who met certain age and service requirements. 61 F.3d at 566. Citing the contract's termination language, this Court rejected the plaintiff's argument:

> Murphy's claim that the Plan vests welfare benefits must be rejected, because the Plan clearly and unambiguously indicates that Murphy's benefits do not vest. The Plan states that retiree benefits terminate "upon the date the Plan is terminated or amended to terminate the Retiree's [or his dependent's] coverage." Murphy urges us to read the coverage language cited earlier as vesting benefits. But if we did so, then the language providing for the termination of retiree benefits would be read out of the contract…The express termination language is plainly inconsistent with any intent to vest benefits.

*Id*. at 566-67 (citations omitted).

Similarly, in *Rockford Powertrain*, the plaintiffs relied on contract language promising retiree health coverage "until…death." 350 F.3d at 703. However, this Court found plaintiffs' claim ignored "two equally important clauses." *Id*. Specifically, a "plan termination clause," which stated "[i]n the event this group plan is terminated, coverage for you and your dependents will end immediately," and a provision reserving the right to "modify, amend, suspend or terminate" the "plan" "at any time." *Id*. at 701. This Court stated that it "must resolve the tension between the lifetime benefits clause, and the plan termination and reservation of rights clause, by giving meaning to all of them." *Id*. at 703 (citations omitted). Thus:

> [r]eading the document in its entirety, the clause explains that although the plan in its current iteration entitles retirees to health coverage for the duration of their lives and the lives of their eligible surviving spouses, the terms of the plan—including the plan's continued existence—are subject to change at the will of [Rockford Powertrain].

10

*Id.* (citations omitted). *See also Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 483-84 (7th Cir. 2006) (rejecting a similar claim because "'lifetime' benefits can be limited to the duration of a contract"); *United Mine Workers v. Brushy Creek Coal Co.*, 505 F.3d 764, 767 (7th Cir. 2007) ("Terminable benefits for life are benefits that go on regardless of the age of the worker or how long ago he retired, but that cease if the plan conferring those benefits end.").

As this Court further explained in *Vallone*, the "problem for the plaintiffs is that 'lifetime' may be construed as 'good for life unless revoked or modified.'" 375 F.3d at 633. And "[t]his construction is particularly plausible if the contract documents include a reservation of rights clause." *Id.* (citations omitted).

These decisions are wholly consistent with *Tackett* and *Reese*, which, among other things, stress the importance of resolving vested retiree medical claims by giving meaning to all relevant provisions and applying durational clauses even if they do not expressly mention retiree medical benefits. *Tackett*, 135 S. Ct. at 933, 936; *Reese*, 138 S. Ct. at 763. Whatever benefits are provided for in Section 6, they must be construed as being limited by the termination language in Section 7. By ignoring the breadth of Section 7, the district court papered over the fact that Plaintiffs' benefits were never truly vested. *Id.*

***Fifth*** and finally, Defendants are likely to prevail on appeal because the district court's cursory attempts to distinguish binding precedent from this Court were unpersuasive and legally flawed. As justification for declining to apply Section 7, the district court found that the decisions of this Court cited by Defendants below were allegedly distinguishable because the relevant provisions in those cases "expressly limited the duration of *benefits* to the duration of the *agreement*." Ex. D at 6 (Dkt. 55 at PageID #:968) (emphasis in original).

Even if factually correct, the district court's reasoning ignores *Tackett*'s and *Reese*'s holding that a termination clause need not specifically reference the alleged vested benefits in order to be given meaning. *See* discussion *supra*. Moreover, there is no indication in any of these cases that the outcome turned on the use of the words "benefits," "coverages" or "coverage."[2] *See Cherry*, 441 F.3d at 479, 483 (rejecting vesting claim where duration clause "act[ed] as an overriding preamble"); *Barnett*, 436 F.3d at 834 (same, where duration clause was an "explicit limitation" that "removes any ambiguity" regarding the contract's reference to "vested" and "vesting"); *Vallone*, 375 F.3d at 636 (reference to "coverages"); *Rockford Powertrain*, 350 F.3d at 703 (reference to "coverage"); *Murphy*, 61 F.3d at 566 (same); *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 601 (7th Cir. 1989) (same).

The district court's Stay Order did not substantively address any of these points. Instead, it simply referred back to its prior Order granting summary judgment for Plaintiffs. *See* Ex. F at 2 (Dkt. 83 at PageID #:1197). However, when all relevant 2002 Agreement provisions are given meaning in accordance with *Tackett*, *Reese*, and this Court's precedent, Defendants respectfully submit that they have a strong likelihood of prevailing on their appeal to this Court.

### III. Absent a Stay, Defendants Will Suffer Irreparable Harm and the District Court Erred in Reaching a Contrary Conclusion and by Presuming Irreparable Harm for Plaintiffs

In support of its motion to stay, Defendant also demonstrated that they will suffer irreparable harm if they are forced to reinstate the 2002 Agreement. Defendants estimate that those obligations will cost approximately $1.3-$1.6 million per year. Dkt. 73-1 (declaration of Patricia Chidiac). These costs include paying retiree medical benefits, as well as administrative expenses such as obtaining coverage, offering re-enrollment, and various other aspects of plan

---

[2] References to "coverage" or "coverages" can just as easily be read as describing the entire contract.

administration.  *Id*.  Because these are not moneys being paid to the Plaintiffs, Defendants will not be able to recoup these costs from Plaintiffs if they prevail on appeal.

This Court has observed that harm is "irreparable" where it "cannot be repaired, retrieved, put down again, [or] atoned for."  *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (citations omitted).  Defendants can meet this standard because it will be difficult if not impossible to recover the expenses incurred during the pendency of this appeal.  When presented with similar facts in prior cases, federal courts have not hesitated to grant a stay.  *See, e.g.*, *Ill. Bell Tel. Co. v. Hurley*, No. 05 C 1149, 2005 WL 735968, at *7 (N.D. Ill. Mar. 29, 2005) (party demonstrated irreparable harm where there was no entity against which monetary damages could be recovered); *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (similar); *Cohen v. Minneapolis Jewish Fed'n*, No. 16-cv-325-jdp, 2018 WL 6191046, at *1 (W.D. Wis. Nov. 28, 2018) (finding moving party demonstrated irreparable harm because absent a stay, if funds in dispute were distributed to third parties, there would be no way for them to be recovered).

Despite the foregoing, the district court rejected Defendants' argument because, while Defendants' losses were "undeniable": (a) the cost "is a small fraction of Defendants' annual revenue…which will not materially affect Defendants' annual corporate revenue"; and (b) Plaintiffs will be forced to incur costs for health insurance "they either do not have or that imposes a substantial burden on their personal finances."  *See* Ex. F at 3 (Dkt. 83 at PageID #:1198).

This holding errs for several reasons.  *First*, the fact that Defendants have substantial resources does not alter the fact that the costs they will have to expend "cannot be repaired, retrieved, put down again, [or] atoned for."  *Graham*, 130 F.3d at 296.  *Cf. Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) (stay pending appeal warranted because without it, *inter alia*, defendant would be irreparably harmed because it would have to implement a new administrative

13

scheme, the implications of which could be not reversed if district court's ruling was later reversed). Even if the district court does not view $1.3-$1.6 million as material to Signode, the fact remains that such amounts "cannot be…retrieved" should Defendants prevail. *Id.*

*Second*, even if Plaintiffs may suffer harm by having to pay for insurance elsewhere, if they prevail they can be compensated via monetary relief. *See, e.g.*, *Solis v. Tenn. Commerce Bancorp, Inc.*, No. 10-5602, 2010 WL 11187001, at *1 (6th Cir. May 25, 2010) (balancing of harms supported stay pending appeal; injunction would cause disruption to the defendants' operation and personnel "that cannot be undone," while the plaintiff could be made whole by award of compensatory damages, back pay and interest). The district court failed to consider this in addressing the parties' respective harms.

*Finally*, Plaintiffs offered no proof in support of their claim of irreparable harm. Rather, they simply cited to other cases where such a finding was made. Dkt. 79 at PageID #:1151-52. But just like in the injunction context, such harm may not be presumed. *See, e.g.*, *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485-89 (3d Cir. 2000) (noting that irreparable harm may not be presumed and noting that there is "no basis for inference-drawing" in this context); *BP Corp. N. Am. Inc. v. N. Trust Invs., N.A.*, No. 08-CV-6029, 2008 WL 5263695, at *5 (N.D. Ill. Dec. 16, 2008) ("[C]ourts must make a case-by-case inquiry and not presume irreparable harm simply because a case involves an ERISA plan."). Thus, the district court's assumption regarding Plaintiffs did not provide a basis for rejecting Defendants' arguments.

Therefore, Defendant submit this factor also supports a stay. *See In re A&F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014) (under "sliding scale" approach, "the greater the moving party's likelihood of success…the less heavily the balance of harms must weigh in its favor").

14

**IV.    The Public Interest Favors a Stay Pending Appeal.**

A stay of an injunction pending appeal is appropriate when, as here, "the public interest lies" in favor of such a stay.  *Cornish*, 759 F. App'x at 506.  As explained above, the 2002 Agreement is a valid contract that permits Defendants to terminate medical benefits.  There is no public interest in requiring Defendants to restore benefits that were lawfully terminated or in enforcing a contract in a manner inconsistent with its plain language.  Indeed, it is well-recognized that "there is a public interest in enforcing valid contracts."  *Bucciarelli-Tieger v. Victory Records, Inc.*, No. 06 C 4258, 2007 WL 1498910, at *4 (N.D. Ill. May 17, 2007); *see also FreemantleMedia-Ltd. v. Colmar, Ltd.*, 2001 WL 1360432, at *2 (N.D. Ill. Nov. 5, 2001) (granting injunction and finding that the moving parties had "the public interest firmly in their favor" because "the public has no interest in enforcing agreements that do not exist").  Thus, to the extent relevant in this Court's weighing analysis, consideration of the public interest favors the grant of a stay.

## CONCLUSION

Defendants-Appellants respectfully request that this Court stay the district court's Order and permanent injunction pending appeal.

Respectfully submitted,

/s/ *Joseph J. Torres*
Joseph J. Torres
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 840-8685
jtorres@jenner.com

*Counsel for Defendants-Appellants Signode Industrial Group LLC and Illinois Tool Works, Inc.*

June 14, 2019

15

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32**

1.    Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) as it contains 4,614 words, excluding the accompanying documents authorized by Fed. R. App. P. 27(a)(2)(B).

2.    This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as qualified by Circuit Rule 32(b), as it has been prepared in a 12-point, proportionally spaced type-face, Times New Roman, by using Microsoft Word 2016.

Dated:  June 14, 2019                        By: /s/ Joseph J. Torres
                                                          JOSEPH J. TORRES

                                                          *Counsel for Defendants-Appellants Signode*
                                                          *Industrial Group LLC and Illinois Tool Works, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2019, I electronically filed the foregoing with the Clerk of the court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  June 14, 2019                              By: /s/ Joseph J. Torres
                                                   JOSEPH J. TORRES

                                                   *Counsel for Defendants-Appellants Signode*
                                                   *Industrial Group LLC and Illinois Tool Works, Inc.*